UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TIMOTHY CARL SCOTT,

      Plaintiff,                       CIVIL ACTION NO. 12-13326

v.                                DISTRICT JUDGE AVERN COHN

                                        MAGISTRATE JUDGE MARK A. RANDON

COMMISSIONER OF
SOCIAL SECURITY,

      Defendant.
_____/

**REPORT AND RECOMMENDATION
ON CROSS-MOTIONS FOR SUMMARY JUDGMENT (DKT. NOS. 9, 10)**

Plaintiff Timothy Carl Scott ("Plaintiff") challenges the Commissioner of Social Security's ("The Commissioner") final denial of his benefits application. Cross motions for summary judgment are pending (Dkt. Nos. 9, 10). Judge Avern Cohn referred the motions to this Magistrate Judge for a Report and Recommendation (Dkt. No. 3).

**I.    RECOMMENDATION**

Because substantial evidence supports the Administrative Law Judge's ("ALJ") decision, this Magistrate Judge **RECOMMENDS** that Plaintiff's motion for summary judgment be **DENIED**, the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

**II.    DISCUSSION**

    *A.    Framework for Disability Determinations*

Under the Social Security Act, (the "Act") Disability Insurance Benefits and Supplemental Security Income are available only for those who have a "disability." *See Colvin v. Barnhart*, 475 F.3d 727, 730 (6th Cir. 2007). The Act defines "disability," in relevant part, as the

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education, or work experience.
>
> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

*See* 20 C.F.R. §§ 404.1520, 416.920; *see also Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 534 (6th Cir. 2001). "The burden of proof is on the claimant throughout the first four steps . . . . If the analysis reaches the fifth step without a finding that the claimant is disabled, the burden transfers to the [Commissioner]." *Preslar v. Sec'y of HHS*, 14 F.3d 1107, 1110 (6th Cir. 1994).

## B.      *Standard of Review*

This Court has jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited such that the Court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has

failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (internal quotation marks omitted); *Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 654 (6th Cir. 2009) ("[I]f an agency has failed to adhere to its own procedures, we will not remand for further administrative proceedings unless the claimant has been prejudiced on the merits or deprived of substantial rights because of the agency's procedural lapses" (internal quotation marks omitted)). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (internal quotation marks omitted); *see also Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994) (internal citations omitted) (explaining that if the Commissioner's decision is supported by substantial evidence, "it must be affirmed even if the reviewing court would decide the matter differently and even if substantial evidence also supports the opposite conclusion"); *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (en banc) (noting that the substantial evidence standard "presupposes . . . a zone of choice within which the decisionmakers can go either way, without interference by the courts" (internal quotation marks omitted)).

When reviewing the Commissioner's factual findings for substantial evidence, this Court is limited to an examination of the record and must consider that record as a whole. *See Bass v. McMahon*, 499 F.3d 506, 512-13 (6th Cir. 2007); *Wyatt v. Sec'y of HHS*, 974 F.2d 680, 683 (6th Cir. 1992). The Court "may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston*, 245 F.3d at 535. There is no requirement, however, that either the ALJ or this Court discuss every piece of evidence in the administrative record. *See Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence

submitted by a party" (internal quotation marks omitted)). Further, this Court does "not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass*, 499 F.3d at 509; *Rogers*, 486 F.3d at 247 ("It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant").

## III.  REPORT

### A.  Administrative Proceedings

Plaintiff applied for disability and disability insurance benefits on August 13, 2009 and supplemental security income on August 14, 2009, alleging he became disabled on October 20, 2008 (Tr. 15). After the Commissioner initially denied Plaintiff's application, he appeared with counsel for a hearing before ALJ Regina Sobrino, who considered the case *de novo*. In a written decision, the ALJ found Plaintiff was not disabled (Tr. 15-24). Plaintiff requested an Appeals Council review (Tr. 9). On July 18, 2012, the ALJ's decision became the final decision of the Commissioner when the Appeals Council declined further review (Tr. 1-3).

### B.  ALJ Findings

Plaintiff was 26 years old on his alleged disability onset date (Tr. 35). He completed the ninth grade, and has past relevant work as a short order cook and furniture mover (Tr. 22, 34). The ALJ applied the five-step disability analysis to Plaintiff's claim and found at step one that he had not engaged in substantial gainful activity since his alleged disability onset date in October 2008 (Tr. 17).

At step two, the ALJ found that Plaintiff had the following "severe" impairments: degenerative disc disease,[1] degenerative joint disease[2] and anxiety (Tr. 17).

---

[1] "Degenerative disc disease is also known as a 'herniated disk'. A herniated disk can irritate nearby nerves and result in pain, numbness or weakness in an arm or leg. On the other hand, many people experience no symptoms from a herniated disk. Most people who have a herniated disk do not need surgery to correct the problem." *See*

-5-

At step three, the ALJ found no evidence that Plaintiff's impairments met or medically equaled one of the listings in the regulations (Tr. 17).

Between steps three and four, the ALJ found that Plaintiff had the Residual Functional Capacity ("RFC") to perform light work[3] with the following limitations: the opportunity to alternate sitting and standing at will; no climbing of ladders; occasional stooping, crouching and climbing of stairs; no use of foot or leg controls; no exposure to hazards or vibration; and, no driving as a work duty. Plaintiff could perform simple, low stress work, but such work should not involve a fast pace, quotas or assembly line production (Tr. 18).

At step four, the ALJ found that Plaintiff could not perform his past relevant work as a short order cook or furniture mover (Tr. 22).

At step five, the ALJ found Plaintiff was not disabled, because he could perform a significant number of jobs available in the economy (Tr. 23).

### C. Administrative Record

#### 1. Plaintiff's Hearing Testimony and Statements

Plaintiff has not worked since October 20, 2008, his alleged disability onset date (Tr. 35). Plaintiff attempted to work as a door to door salesperson for three months in 2010, but could not handle the job because it required a significant amount of walking, which aggravated his back (Tr. 35-36).

---

http://www.mayoclinic.com/health/herniated-disk/DS00893 (last visited June 6, 2013).

[2]Degenerative joint is disease is also known as osteoarthritis. It is "a noninflammatory degenerative joint disease . . . characterized by degeneration of the articular cartilage, hypertrophy of bone at the margins, and changes in the synovial membrane. It is accompanied by pain, usually after prolonged activity, and stiffness, particularly in the morning or with inactivity." *See Dorland's Illustrated Medical Dictionary*, 1365 (31st Ed. 2007).

[3]"Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying weighing up to 10 pounds." 20 C.F.R. § 404.1567(b).

Plaintiff testified that he cannot stand for longer than 15 to 20 minutes and can only sit for about 15 minutes before he needs to stand up (Tr. 35-36). Plaintiff said that he does not do any household chores; his live-in girlfriend does housework for him (Tr. 38). Plaintiff also testified that he has difficulties bathing and dressing himself (Tr. 38-39). Plaintiff was taking medications for pain, high blood pressure, and anxiety (Tr. 39).

Plaintiff testified that, approximately five times a day, he must recline and raise his feet above his waist to ease his lower back pain (Tr. 42). Plaintiff also testified that he has difficulty sleeping at night because of his back pain, and he must take about three short naps throughout the day (Tr. 42).

### 2. Vocational Expert

The ALJ asked a vocational expert ("VE") to assume a hypothetical individual of Plaintiff's age, education and vocational experience. The individual could lift, carry, push and pull no more than 10 pounds frequently, and no more than 20 pounds occasionally. The individual could stand or walk six hours in an eight-hour workday with typical breaks and a lunch period. The individual should not climb ladders, and could occasionally climb stairs, stoop and crouch. The individual should not be exposed to hazards or vibrations; should not drive; and was limited to low stress work that did not involve quotas and assembly-line work (Tr. 45-46).

The VE testified that such an individual could not perform Plaintiff's past relevant work (Tr. 45-46). However, such an individual could perform work as an attendant, cleaner, laundry worker, surveillance system monitor or ticket-taker (Tr. 47-49). The VE further testified that some of the listed jobs let a person sit or stand at will (Tr. 47-48). The VE also testified that the individual would be precluded from work if he needed to "nap or elevate [his] feet above waist-level at unpredictable times, outside the normally allowed breaks and lunch periods..." (Tr. 50-51).

According to the VE, employers generally provide their employees two 15-minute breaks, one 30-minute to an hour lunch break, and only one absence per month on an ongoing basis (Tr. 50).

### D. Plaintiff's Claims of Error

Plaintiff argues that: (1) the ALJ's hypothetical question to the VE was inconsistent with the medical evidence, and (2) the ALJ improperly discounted the VE's testimony. Both arguments should be rejected.

#### 1. Hypothetical Question to the VE

Plaintiff argues that the ALJ's hypothetical to the VE did not accurately portray Plaintiff's impairments, and therefore, substantial evidence does not support the ALJ's finding that Plaintiff is not disabled.

Where an ALJ poses a hypothetical question to a VE that fully and accurately incorporates Plaintiff's physical and mental limitations, the expert's testimony in response constitutes substantial evidence to support a finding that Plaintiff is capable of performing a significant number of jobs in the national or regional economy, and thus is not disabled. *See Varley v. Sec'y of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). Conversely, where the hypothetical does not accurately depict Plaintiff's limitations, the VE's testimony cannot support such a finding. "In forming a hypothetical question, to be posed to a vocational expert, the ALJ is required to incorporate only those limitations that he accepts as credible." *Bivens v. Astrue*, 2012 WL 4739325, at *6 (N.D. Ohio Oct. 3, 2012) (citing *Grieffeth v. Comm'r of Soc. Sec.*, 217 Fed. Appx. 425, 429 (6th Cir. 2007)).

First, Plaintiff argues that the ALJ's hypothetical failed to include the Plaintiff's need to raise his feet above waist level five times a day in order to ease his back pain (Tr. 42). An ALJ cannot find a claimant disabled based solely on subjective complaints. 20 C.F.R. §§ 404.1528, 404.1529, 416.928, 416.929. Furthermore, an ALJ is not *required* to credit a claimant's

subjective complaints, especially when those complaints are not supported by objective medical evidence. *See Young v. Sec'y of Health and Human Servs.*, 925 F.2d 146, 151 (6th Cir. 1995) (holding that the plaintiff failed to provide objective evidence of her alleged disabling pain and affirming the ALJ's non-disability finding). The ALJ is only required to include Plaintiff's credible limitations in her hypothetical question. *Casey v. Sec'y of Health and Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993); *see* Social Security Ruling (SSR) 96-7p, 1996 WL 374186, at *1 (July 2, 1996).

The ALJ considered whether Plaintiff's statements were supported by substantial evidence in the record, and reasonably found Plaintiff's testimony at the hearing to be inconsistent with his previous statements and unsupported by the medical evidence.[4] Plaintiff reported in September 2009 that he was limited in lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, stair climbing, completing tasks and using his hands; however, Plaintiff did not use a walking aid or braces and he indicated that he was independent in his personal care. At the hearing, Plaintiff testified that his girlfriend did the household chores and shopping (Tr. 37-38), but in the September 2009 Function Report, Plaintiff indicated that he was able to prepare his own meals, do household chores, and shop for food independently (Tr. 159-170).[5] Sarah Ruff, M.D. opined that the claimant's limitations would "likely disrupt a regular job schedule with low physical demands for "most of the hours" of a 160-hour work month (Tr. 257-259). However, electromyographic studies (evaluating the health of Plaintiff's muscles and

---

[4]Plaintiff does not contest the ALJ's credibility findings.

[5]The record also contains evidence that Plaintiff went job hunting during the relevant time period. In essence, while Plaintiff told the Social Security Administration that he was unable to work, he told prospective employers that he could work (Tr. 163). Federal rules and regulations state that an individual will not be found disabled if his residual functional capacity and vocational abilities make it possible for him to do work that exists in the national economy, but he remains unemployed because of his inability to get work, the lack of work in the local area, or the hiring practices of employers. *See* 20 C.F.R. §§ 404.1566(c), 416.966(c).

related nerves) in July 2009 were normal (Tr. 194, 243). In October 2009, Frank Schinco, M.D., a neurosurgeon, evaluated the Plaintiff and reported the he had a good range of motion and did not think that surgery was warranted (Tr. 21, 203).

There is no evidence in the record, with the exception of Plaintiff's testimony, that supports Plaintiff's reported need to lie down and nap throughout the day, and elevate his feet above waist-level five times per day (Tr. 42-43).[6] Not a single treating physician mentioned such a need, and the medical evidence does not otherwise support such limitations (Tr. 182-259). This Magistrate Judge finds no error in the ALJ's decision to disregard this purported limitation in her hypothetical.

Plaintiff next argues that the ALJ's hypothetical failed to include the limitations contained in the medical source statement of Dr. Ruff. But, Plaintiff appears only to refer to parts of Dr. Ruff's opinion. For example, Dr. Ruff found that Plaintiff could not lift more than ten pounds (Dkt. No. 9 at 9-11 (CM/ECF)). Further, beyond making vague reference to the regulations' suggested treatment of treating source opinions, Plaintiff fails to substantiate an argument that the ALJ erred in his application of the treating source rule (Dkt. No. 9 at 9 (CM/ECF)).

---

[6]Plaintiff similarly argues that the ALJ erred in discounting the VE's testimony; specifically, he refers to the following:

> *Plaintiff's counsel: [I]f a person needs to lie down or nap or elevate their feet above waist-level at unpredicted times, outside these normally allowed breaks and lunch periods, would that preclude work?*
>
> *VE: I would state yes.*

(Tr. 50-51). Because this involves the same limitations that Plaintiff argues the ALJ failed to incorporate in his hypothetical to the VE – and the ALJ reasonably found them to be unsupported by the record – this Magistrate Judge need not address this argument further.

-10-

Notably, Plaintiff does not even contest the ALJ's determination that Dr. Ruff's medical source opinion was unsupported and inconsistent with the evidence of record.[7] *See Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 375 (6th Cir. 2013) ("Treating-source opinions must be given 'controlling weight' if two conditions are met: (1) the opinion 'is well-supported by medically acceptable clinical and laboratory diagnostic techniques'; and (2) the opinion 'is not inconsistent with the other substantial evidence in [the] case record.' (citing 20 C.F.R. § 404.1527(c)(2); Wilson *v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)). Accordingly, this argument should also fail. *See McPherson v. Kelsey*, 125 F.3d 989, 995 96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in a most skeletal way, leaving the court to ... put flesh on its bones.").

In sum, this Magistrate Judge finds that the ALJ's hypothetical question to the VE fully and accurately incorporated Plaintiff's physical and mental limitations. As such, substantial evidence supports the ALJ's decision that Plaintiff is not disabled, and it should not be disturbed on appeal.

---

[7]In so finding, the ALJ noted that Dr. Ruff's treatment notes indicated that Plaintiff had stable or controlled back pain (Tr. 20-22). She also considered the findings of Plaintiff's other treating sources, Dr. Cady and Dr. Schinco: Dr. Cady examined the claimant in October 2009 and found that the Plaintiff had "good strength" in his lower extremities, and Dr. Schinco, also in October 2009, determined that a "continued conservative approach" should be taken in treating the Plaintiff; he did not think that surgery was warranted (Tr. 19, 199, 203). The ALJ found that the observations of Dr. Cady and Dr. Schinco contradicted Dr. Ruff's opinion that Plaintiff could occasionally lift/carry/upward pull less than 10 pounds; could stand/walk less than two hours in an eight hour work day; and, must alternate sitting and standing (Tr. 20). The ALJ also considered inconsistencies between Dr. Ruff's medical opinion and Plaintiff's statements about his daily activities. Plaintiff prepared his own meals (Tr. 163, 165), took care of his personal needs (Tr. 164), did the laundry (Tr. 165) and swept for periods of time (Tr. 165). Plaintiff got around by riding in a car (Tr. 166), shopped (Tr. 166, 169) and did not use an assistive device when walking (Tr. 167).

IV.     CONCLUSION

Based on the foregoing, **IT IS RECOMMENDED** that Plaintiff's motion for summary judgment be **DENIED,** the Commissioner's motion for summary judgment be **GRANTED**, and the Commissioner's findings be **AFFIRMED**.

The parties to this action may object to and seek review of this Report and Recommendation within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan*, 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *See McClanahan v. Comm'r Soc. Sec.*, 474 F.3d 830 (6th Cir. 2006); *Frontier*, 454 F.3d at 596-97. Objections are to be filed through the Case Management/Electronic Case Filing (CM/ECF) system or, if an appropriate exception applies, through the Clerk's Office. *See* E.D. Mich. LR 5.1. A copy of any objections is to be served upon this Magistrate Judge but this does not constitute filing. *See* E.D. Mich. LR 72.1(d)(2). Once an objection is filed, a response is due within fourteen (14) days of service, and a reply brief may be filed within seven (7) days of service of the response. *See* E.D. Mich. LR 72.1(d)(3), (4).

s/Mark A. Randon
Mark A. Randon
United States Magistrate Judge

Dated: July 22, 2013


*Certificate of Service*

I hereby certify that a copy of the foregoing document was mailed to the parties of record on this date, July 22, 2013, by electronic and/or ordinary mail.

      *s/Eddrey Butts*
      *Acting Case Manager for Magistrate Judge Mark A. Randon*

2:12-cv-13326-AC-MAR Doc # 11 Filed 07/22/13 Pg 12 of 12 Pg ID 333